OPINION
{¶ 1} Defendant-appellant Kelly M. Donahue appeals from his conviction and sentence in the Lancaster Municipal Court on one count of criminal trespass under Pickerington Municipal Code Section 642.10 (A) (2), a misdemeanor of the fourth degree. The plaintiff appellee is the State of Ohio.
 {¶ 2} On June 20, 2003, Commander Stephen H. Annetts of the City of Pickerington Police Department was working special duty for the BIA (Building Industry Association of Central Ohio) at the Parade of Homes in Pickerington, Ohio. The property was contractually in the control of the BIA and private security and local law enforcement were hired by the BIA to control traffic and enforce the rules and regulations established by the BIA for the Parade of Homes.
 {¶ 3} Commander Annetts observed a vehicle with a worker pass in the windshield. He waived the vehicle into the designated work parking area. As the occupants of the vehicle approached him, he saw that they had V.I.P. passes to the Parade of Homes. Due to a large number of vendors involved in the show, considerable rain, and high attendance at the show, worker parking was scarce.
 {¶ 4} Commander Annetts approached the group and asked to see the worker pass in order to confirm that they were working and entitled to worker parking. No one could produce a worker pass, although appellant's wife allegedly had one in the car. Commander Annetts determined that they were not working, pointed out the signs regarding parking, and asked them to move the car to general parking. Appellant disagreed and informed the officer that he believed that he had the right to park in the worker parking location. Commander Annetts informed appellant on 2 or 3 occasions that he needed to move the vehicle or leave the Parade of Homes. Appellant indicated to the officers that he had a right to park there and he had done nothing wrong.
 {¶ 5} Commander Annetts testified that he was following appellant to make sure he left the premises, but appellant stopped, turned around, and told Commander Annetts he had no right to make him leave the show. Commander Annetts testified that appellant was defiant and arrogant.
 {¶ 6} After refusing several requests to move the car or leave the premises, Commander Annetts informed appellant that he was under arrest for disorderly conduct.
 {¶ 7} Appellant was cited in Pickerington Mayor's Court for one count of Persistent Disorderly Conduct on June 30, 2003, where he pled not guilty and executed a time waiver. The case in Mayor's Court was subsequently dismissed and the charges were re-filed in Lancaster Municipal Court on August 19, 2003. The appellant was charged in Municipal Court with one count of Persistent Disorderly Conduct and two counts of Criminal Trespass. On September 5, 2003 and October 8, 2003, appellant filed two separate motions to dismiss. The trial court overruled both motions on November 10, 2003. On November 12, 2003, appellant executed a time waiver.
 {¶ 8} A jury trial was held on February 17, 2004. At the conclusion of the trial the trial court granted appellant's Crim. R. 29 motions for acquittal on the count of disorderly conduct and one count of criminal trespass. The second count of criminal trespass was sent to the jury. Upon completion of their deliberations, the jury found appellant guilty of one count of criminal trespass. The trial court deferred sentencing and ordered a pre-sentence investigation report. The trial court sentenced appellant to 30 days in jail and placed him on probation for two years. The court suspended the 30-day jail sentence. The court further ordered appellant to perform 120 hours of community service and to pay a fine of $200.
 {¶ 9} Appellant timely filed the instant appeal and raises the following nine assignments of error for our consideration:
 {¶ 10} "I. The lower court erred because it did not have jurisdiction to consider this matter and violated Criminal Rule 3."
 {¶ 11} "II. The lower court violated the defendants right to speedy trial.
 {¶ 12} "III. The court violated the defendants right to due process and equal protection of the law by allowing improper evidence and by not allowing the defendant to introduce relevant evidence.
 {¶ 13} "IV. The finding that defendant was guilty of tresspass [sic] with evidence was against the manifest weight of the evidence.
 {¶ 14} "V. The denial of defendants motion to dismiss was against the substantial wieght [sic] of the evidence.
 {¶ 15} "VI. The lower court violated the defendants right to due process and equal protection under the law when it denied defendants motion for a bill of particulars.
 {¶ 16} "VII. The lower court violated the defendants right to due process, equal protection under the law, and fundamental fairness when it gave the jury a prompt to reach a verdict without a discussion and or approval by counsel or defendant and gave improper jury instructions and failed to give requested instructions.
 {¶ 17} "VIII. The judge abused his discretion when he sentenced the defendant to 2 years of probation and 120 hours of community service.
 {¶ 18} "IX. Selective prosecution."
 I. {¶ 19} In his First Assignment of Error, appellant maintains that the trial court lacked jurisdiction to proceed because the complaint was filed in violation of Crim. R. 3. Specifically, appellant argues that the officer who filed the complaint against appellant did not have personal knowledge of the facts which gave rise to the complaint. We disagree.
 {¶ 20} The purpose of a criminal complaint is to inform the accused of the crime for which he is charged. State v. Villagomez (1974),44 Ohio App.2d 209, 211, 337 N.E.2d 167. The complaint forms the essential basis of the court's jurisdiction and the subsequent trial and judgment. Id.
 {¶ 21} Crim.R. 3 defines a criminal complaint as follows:
 {¶ 22} "[A] written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. It shall be made upon oath before any person authorized by law to administer oaths."
 {¶ 23} A complaint is deemed sufficient if it charges an offense in the words of the statute or ordinance upon which it is based. State v.Riffle, Pickaway App. No. 00CA041, 2001-Ohio-2415 (citation omitted). In determining the sufficiency of a complaint, the Ohio Supreme Court stated that "[i]t is not necessary that the affidavit be executed by one who observed the commission of the offense. It is sufficient if such person has reasonable grounds to believe that the accused has committed the crime." Sopko v. Maxwell (1965), 3 Ohio St.2d 123, 124, 209 N.E.2d 201;State v. Maxwell (1995), 102 Ohio App.3d 1, 656 N.E.2d 954, State v.Hawk, 3rd Dist. No. 1-03-54, 2004-Ohio-922.
 {¶ 24} The complaint/affidavit in the case at bar specifically set forth the essential facts constituting the charged offenses, and designated the applicable statutes for the offenses charged against appellant. The officer attested under oath to the affidavit, signed it in front of a notary, and the affidavit was properly notarized pursuant to Crim. R. 3. The officer who signed the affidavit received the information from the arresting officer. (2T. at 225). He transported appellant after he was arrested, and completed the necessary paperwork. (Id. at 220-223).
 {¶ 25} Crim. R. 3 was complied with in the case at bar. Therefore the trial court had proper jurisdiction to proceed with appellant's case.
 {¶ 26} Appellant's First Assignment of Error is overruled.
 II. {¶ 27} In his second assignment of error, Appellant contends the trial court erred in denying his speedy trial motion. We disagree.
 {¶ 28} In Ohio, the right to a speedy trial has been implemented by statutes that impose a duty on the State to bring to trial a defendant who has not waived his right to a speedy trial within the time specified by the particular statute. R.C. 2945.71.
 {¶ 29} Appellant argues that he was not brought to trial within the 45 day speedy trial guidelines for a fourth-degree misdemeanor as provided by Revised Code 2945.71.
 {¶ 30} Our standard of review upon an appeal raising a speedy trial issue is to count the expired days as directed by R.C. § 2945.71, et seq. State v. DePue (1994), 96 Ohio App.3d 513, 516, 645 N.E.2d 745; See, also, Cleveland v. Seventeenth Street Association (Apr. 20, 2000), Cuyahoga App. No. 76106; State v. Gabel (Oct. 31, 1996), Cuyahoga App. No. 69607. Where we find ambiguity, we construe the record in favor of the accused. State v. Singer (1977), 50 Ohio St.2d 103, 109,362 N.E.2d 1216; State v. Mays (1996), 108 Ohio App.3d 598, 609,671 N.E.2d 553.
 {¶ 31} The law in Ohio is that the right to a speedy trial time starts to run the day after arrest. R.C. 2945.71. However, we toll "any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused." R.C. 2945.72(E).
 {¶ 32} On February 4, 2004 the trial court journalized its decision overruling appellant's motion to dismiss for violation of his right to a speedy trial. The trial court noted that appellant was arrested on June 20, 2003 and charged with Persistent Disorderly Conduct in Pickerington Mayor's Court. Appellant was arranged on June 30, 2003 at which time appellant executed a waiver of time. Accordingly, only the time period between June 20 and June 30, 2003 applied for speedy trial purposes.
 {¶ 33} Appellant's case was dismissed in the Mayor's court on August 15, 2003, and subsequently re-filed in the Lancaster Municipal Court on August 19, 2003. On September 5, 2003, appellant filed his first Motion to Dismiss. By Judgment Entry filed September 16, 2003, the trial court set the motion for hearing on November 11, 2003. On October 8, 2003, appellant filed his second Motion to Dismiss. The preceding facts are set forth in the trial court's February 4, 2004 Judgment Entry.
 {¶ 34} In State v. Bickerstaff (1984), 10 Ohio St.3d 62, 461 N.E.2d 892
the Ohio Supreme Court noted with respect to R.C. 2945.72(E): "[i]t is evident from a reading of the statute that a motion to dismiss acts to toll the time in which a defendant must be brought to trial." Id. at 67,461 N.E. 2d 892. Accordingly, the time period between September 5, 2003 and the trial court's ruling on the Motions on November 10, 2003 is not included for speedy trial purposes. In Bickerstaff, supra, the Court found no prejudice from a five month delay between the filing of the Motion to Dismiss and the trial court's ruling upon the motion. Id.
 {¶ 35} On November 11, 2003 appellant executed a time waiver. On December 18, 2003 appellant executed a second time waiver.
 {¶ 36} Accordingly, ten (10) days elapsed between appellant's arrest, his arraignment in Mayor's Court and his signing a time waiver. Eighteen (18) days elapsed between the re-filing of the case in Municipal Court on August 19, 2003 and appellant's filing of his first Motion to Dismiss in the Municipal Court on September 5, 2003. Two (2) days elapsed between the trial court's oral ruling denying both of appellant's motions to dismiss on November 10, 2003 and the appellant's execution of a time waiver in the municipal court case on November 12, 2003. Accordingly, only thirty (30) of the statutory forty-five (45) days had elapsed prior to appellant's execution of his first time waiver.
 {¶ 37} The trial court correctly ruled that appellant's right to a speedy trial was not abridged. Accordingly, appellant's Second Assignment of Error is overruled.
 III. {¶ 38} In his Third Assignment of Error, appellant argues that the trial court erred by not permitting appellant to cross-examine and present evidence concerning a pending civil suit brought against the City of Pickerington and the officer who arrested appellant arising from the underlying facts which form the basis of the charges against appellant. Appellant further argues that it was error to permit the testimony of Tom Hart relating to the Building Industries Association's rules and regulations governing the Parade of Homes.
 {¶ 39} The trial court treated appellant's request to cross-examine concerning the civil suit as a Motion in Limine. (1T. at 82). The granting or denial of a motion in limine is a tentative, interlocutory, precautionary ruling reflecting the trial court's anticipatory treatment of an evidentiary issue. State v. Grubb (1986), 28 Ohio St.3d 199, 201,503 N.E.2d 142. Appellant fails to identify in the record where he attempted to seek introduction of Cmdr. Annetts' testimony at trial concerning a pending civil suit and never proffered what his testimony would have been into the record. Having failed to do so, appellant has failed to preserve this issue for appellate review and cannot demonstrate prejudice.
 {¶ 40} Appellant's proffer of the testimony of Robert Mapes, prosecuting attorney for Pickerington Mayor's Court, reveals that it wasappellant who offered not to file a civil suit or to dismiss his civil suit if the State would dismiss the criminal charges. (1T. at 88). The trial court also noted that the criminal charges were filed before the institution of any civil suit. (1T. at 13). The in-chamber discussions were not placed upon the record so appellant has failed to preserve this issue for appellate review.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, we will not disturb a trial court's evidentiary ruling unless we find the trial court abused its discretion. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 41} Of course, a trial court can impose reasonable limits upon cross-examination: "[i]t does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, `the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' Delaware v. Fensterer (1985), 474 U.S. 15,20, 88 L.Ed.2d 15, 106 S.Ct. 292 (per curiam) (emphasis in original)." VanArsdall, supra, 475 U.S. at 679.
 {¶ 42} Any violation of appellant's Sixth Amendment rights was harmless beyond a reasonable doubt. In Van Arsdall, supra, the Court stated:"[t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. Cf. Harrington, 395 U.S., at 254, 23 L.Ed. 2d 284, 89 S.Ct. 1726;Schneble v. Florida, 405 U.S. at 432, 31 L.Ed. 2d 340, 92 S.Ct. 1056."
 {¶ 43} In the instant matter, a civil suit against the City of Pickerington and Commander Annetts was instituted by appellant. In the case at bar the issue of the civil suit was only marginally relevant, if relevant at all. The proffered record clearly indicates that the police department was not interested in dropping the charges in exchange for a dismissal of the civil suit. (Id. at 88). Accordingly, it can hardly be argued that this action has been maintained in an effort to avoid liability on the part of the police or prosecutor.
 {¶ 44} We cannot find that the trial court abused its discretion on the issue of the civil suit.
 {¶ 45} In applying the factors set forth in Van Arsdall, supra, the trial court's refusal to permit cross-examination of the complaining witness on the pending civil suit was harmless beyond a reasonable doubt. Accordingly, appellant's right to confront his accuser pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution were not violated. This part of Appellant's Third Assignment of Error is overruled.
 {¶ 46} With respect to the testimony concerning the enforcement of the rules and regulations of the Building Industry Association, we find the evidence was relevant to establish the rules and regulations for patrons and workers attending the Parade of Homes on the date in question. The testimony established the rules and regulations in place for parking and admittance, and the authority and enforcement of special duty officers like Commander Annetts. The testimony further related to the distinctions between a worker pass, VIP pass and the signage that was observable in the area concerning the ability to park in various areas designated for parking. The appellant's argument that the evidence was irrelevant because he did not have personal knowledge goes to the weight not the admissibility of the evidence. Accordingly, the trial court did not err in permitting the testimony of Mr. Hart. This part of appellant's Third Assignment of Error is overruled.
 {¶ 47} Accordingly, appellant's Third Assignment of Error is overruled.
 IV. V. {¶ 48} In his Fourth Assignment of error appellant argues that his conviction is not supported by sufficient evidence. In his Fifth Assignment of Error appellant argues that his conviction is against the manifest weight of the evidence. We shall address these assignments of error together.
 {¶ 49} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt,State v. Jenks (1991), 61 Ohio St. 3d 259.
 {¶ 50} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 51} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins (1997), 78 Ohio St. 3d 387, citations deleted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 52} Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 53} In the case at bar, the trial court instructed the jury that to find the appellant guilty of criminal trespass, the State was required to prove beyond a reasonable doubt that appellant, "[w]ithout privilege to do so, being upon the land or premises of another, negiligently did fail or refuse to leave upon being notified to do so by the owner or occupant or the agent or servant of either." (2T. at 421).
 {¶ 54} The evidence established at trial in appellant's case that On June 20, 2003, Commander Stephen H. Annetts of the City of Pickerington Police Department was working special duty for the BIA (Building Industry Association of Central Ohio) at the Parade of Homes in Pickerington, Ohio. The property was contractually in the control of the BIA and private security and local law enforcement were hired by the BIA to control traffic and enforce the rules and regulations established by the BIA for the Parade of Homes.
 {¶ 55} The testimony established the rules and regulations in place for parking and admittance, and the authority and enforcement of special duty officers like Commander Annetts. The testimony further related to the distinctions between a worker pass, VIP pass and the signage that was observable in the area concerning the ability to park in various areas designated for parking.
 {¶ 56} Commander Annetts informed appellant on 2 or 3 occasions that he needed to move the vehicle or leave the Parade of Homes.
 {¶ 57} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of criminal trespass.
 {¶ 58} We hold, therefore, that the state met its burden of production regarding each element of the crime of criminal trespass and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 59} Although appellant presented his testimony and that of several witnesses and cross examined the officer regarding his actions to contradict the State's inference that he, without privilege to do so negligently failed or refused to leave after being told to do, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 60} It is well established that trespass can be committed even upon public land. Adderley v. Florida (1966), 385 U.S. 39, 87 S.Ct. 242,17 L.Ed.2d 149. See, also, the discussion in the dissent in Athens v.Bromall (1969), 20 Ohio App.2d 140,166, 252 N.E.2d 298.
 {¶ 61} If the status of land as public property is not always a defense to a charge of trespass, which is always an entry without privilege, then, concomitantly, the public official or agency into whose charge the property is put can withdraw or revoke the privilege otherwise enjoyed by a member of the public to enter. Whether that action has occurred, and whether it is reasonable, is a question of fact. See, e.g.Dayton v. Moore (March 25, 1993), 2nd Dist. No. 13369. Whether appellant's privilege was withdrawn in the case at bar was an issue for the trier of fact.
 {¶ 62} We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant without privilege to do so negligently failed to leave upon being notified to do so. Accordingly, appellant's conviction for criminal trespass was not against the manifest weight of the evidence.
 {¶ 63} Appellant's Fourth and Fifth Assignments of Error are overruled.
 VI. {¶ 64} In his Sixth Assignment of Error, appellant argues that he was denied due process and equal protection by the trial court's failure to order the State to provide a Bill of Particulars. We disagree.
 {¶ 65} In the case at bar, only one count of criminal damaging was submitted to the jury at the conclusion of appellant's trial. Appellant's argument that he did not know what particular act constituted the trespass, i.e. failure to move the car, or failure to leave the area is unpersuasive.
 {¶ 66} "The Schad[v. Arizona (1991), 501 U.S. 624, 111 S.Ct. 2491,115 L.Ed.2d 555] court noted: `We have never suggested that in returning general verdicts in [cases proposing multiple theories] the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, `different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.' `Id. at 631-632,111 S.Ct. 2491, 115 L.Ed.2d 555, quoting McKoy v. N. Carolina (1990),494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (Blackmun, J., concurring)." State v. Skates (2004), 104 Ohio St.3d 195, 205-206,2004-Ohio-6391 at ¶ 53-54, 819 N.E.2d 215, 237.
 {¶ 67} Appellant was not prejudiced because he was in fact able to present his defense and arguments to each theory upon which the charge of criminal trespass was premised. Further the trial court instructed the jury that the crime charge was based upon appellant's "[w]ithout privilege to do so, being upon the land or premises of another, negligently did fail or refuse to leave upon being notified to do so by the owner or occupant or the agent or servant of either." (2T. at 421).
 {¶ 68} Accordingly, appellant's Sixth Assignment of Error is overruled.
 VII. {¶ 69} In his Seventh Assignment of Error, appellant maintains that he was denied equal protection and due process by the trial court's deadlock instruction to the jury without notifying counsel and further the failure of the trial court to instruct the jury that the State must prove lack of privilege to sustain a conviction for criminal trespass. We disagree.
 {¶ 70} As a general rule, any communication with the jury outside the presence of the defendant or parties to a case by either the judge or court personnel is error which may warrant the ordering of a new trial.Rushen v. Spain (1983), 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267,Remmer v. United States (1954), 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654,Bostic v. Connor (1988), 37 Ohio St.3d 144, 149, 524 N.E.2d 881, 886.
 {¶ 71} Private communications outside the presence of the defendant, does not, however, create a conclusive presumption of prejudice. Remmerv. United States, supra, at 229; State v. Jenkins (1984),15 Ohio St.3d 164, 236-237, 473 N.E.2d 264.
 {¶ 72} { ¶ 30} A defendant has a constitutional right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Snyder v. Massachusetts, 291 U.S. 97,105-106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). See, State v. Wilhelm
(Oct. 14, 2004), 5th Dist. No. 03CA25. 03CA26, 2004-Ohio-5522 at ¶28-30.
 {¶ 73} In a direct appeal, a reviewing court may only consider what is contained in the trial court record. See, e.g., State v. Ishmail (1976),54 Ohio St.2d 402, 377 N.E.2d 500, syllabus. See, also, State v.Hartman, 93 Ohio St.3d 274, 299, 2001-Ohio-1580, 754 N.E.2d 1150
(explaining that if establishing ineffective assistance of counsel requires proof outside the record, then such claim is not appropriately considered on direct appeal). The record in the case at bar contains no reference to the trial court instructing the jury regarding deadlock. To raise this claim, if appellant bases his contention on matters outside the record, a defendant must pursue the post-conviction remedies outlined in R.C. 2953.21. State v. Jacobson, Adams App. No. 01CA730, 2003-Ohio-1201, at ¶ 14, quoting State v. Cooperrider (1983), 4 Ohio St.3d 226, 228,448 N.E.2d 452. Therefore, the appellant's claim in this regard is not properly before this Court.
 {¶ 74} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Martens (1993), 90 Ohio App.3d 338. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Jury instructions must be reviewed as a whole. State v. Coleman (1988),37 Ohio St.3d 286.
 {¶ 75} The trial court charged the jury as to the specific elements of criminal trespass. The jury charge is explicit as to the statutory elements and the definition of privilege. (2T. at 418-428). The defense counsel addressed the issue of privilege in his closing arguments. Id. at 415). Upon review, we find no error in the trial court's instructions.
 {¶ 76} Appellant's Seventh Assignment of Error is overruled.
 VIII. {¶ 77} In his Eighth Assignment of Error, Appellant maintains that the trial court abused its discretion in sentencing appellant to 2 years of probation and 120 hours of community service. We disagree.
 {¶ 78} Misdemeanor sentencing is governed by R.C. 2929.22 which states as follows:
 {¶ 79} "(A) In determining whether to impose imprisonment or a fine, or both, for a misdemeanor, and in determining the term of imprisonment and the amount and method of payment of a fine, the court shall consider the risk that the offender will commit another offense and the need for protecting the public from the risk; the nature and circumstances of the offense; the history, character, and condition of the offender and his need for correctional or rehabilitative treatment; any statement made by the victim, if the offense is a misdemeanor specified in division (A) of section 2930.01 of the Revised Code; and the ability and resources of the offender and the nature of the burden that payment of a fine will impose on him.
 {¶ 80} "(B) The following do not control the court's discretion, but shall be considered in favor of imposing imprisonment for a misdemeanor:
 {¶ 81} "(1) The offender is a repeat or dangerous offender; {¶ 82}
"(2) Regardless of whether or not the offender knew the age of the victim, the victim of the offense was sixty-five years of age or older, permanently and totally disabled, or less than eighteen years of age at the time of the commission of the offense.
 {¶ 83} "(C) The criteria listed in section 2929.12 of the Revised Code, favoring shorter terms of imprisonment for felony, do not control the court's discretion, but shall be considered against imposing imprisonment for a misdemeanor.
 {¶ 84} "(D) The criteria listed in divisions (B) and (C) of this section shall not be construed to limit the matters which may be considered in determining whether to impose imprisonment for a misdemeanor.
 {¶ 85} "(E) The court shall not impose a fine in addition to imprisonment for a misdemeanor, unless a fine is specially adapted to deterrence of the offense or the correction of the offender, the offense has proximately resulted in physical harm to the person or property of another, or the offense was committed for hire or for purpose of gain.
 {¶ 86} "(F) The court shall not impose a fine or fines which, in the aggregate and to the extent not suspended by the court, exceeds the amount which the offender is or will be able to pay by the method and within the time allowed without undue hardship to himself or his dependents, or will prevent him from making restitution or reparation to the victim of his offense."
 {¶ 87} Sentencing and imposing fines are within the sound discretion of the trial court. State v. O'Dell (1989), 45 Ohio St.3d 140,543 N.E.2d 1220. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 88} R.C. 2951.02(B) states: "(B) If an offender is convicted of or pleads guilty to a misdemeanor, the court may require the offender, as a condition of the offender's sentence of a community control sanction, to perform supervised community service work in accordance with this division . . ."
 {¶ 89} This section grants broad discretion to the trial court to consider and impose any conditions that may be said reasonably to relate to the stated statutory ends. State v. Jones (1990), 49 Ohio St.3d 51,550 N.E.2d 469. In the context of probation, with the test of reasonableness anchored to the language of R.C. 2951.02(C), the Ohio Supreme Court, in Jones, supra, at 53, 550 N.E.2d at 470, adopted the Sixth Appellate District's criteria from State v. Livingston (1976),53 Ohio App.2d 195, 372 N.E.2d 1335 to determine whether a condition of probation exceeded the scope of the statute:
 {¶ 90} "In determining whether a condition of probation is related to the `interests of doing justice, rehabilitating the offender, and insuring his good behavior,' courts should consider whether the condition (1) is reasonably related to rehabilitating the offender (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation."
 {¶ 91} In the case at bar, the trial court did not sentence appellant to a term of imprisonment. The court had the benefit of as pre-sentence investigation report. In State v. Untied (Mar. 5, 1998), Muskingum App. No. CT97-0018, we addressed the issue of failure to include the pre-sentence investigation report and stated: "Appellate review contemplates that the entire record be presented.
 {¶ 92} "App.R. 9. When portions of the transcript necessary to resolve issues are not part of the record, we must presume regularity in the trial court proceedings and affirm. Knapp v. Edwards Laboratories
(1980), 61 Ohio St.2d 197, 400 N.E.2d 384. The pre-sentence investigation report could have been submitted "under seal" for our review.
 {¶ 93} "Without the cited information and given the trial court (sic) findings on the record, we cannot say appellant's sentence was against the manifest weight of the evidence or `contrary to law." Id. at 7.
 {¶ 94} We reach the same conclusion, in the case sub judice, because appellant failed to include in the record the pre-sentence investigation report.
 {¶ 95} We conclude that the trial court did not commit error when it sentenced Appellant to a term of community service and probation in lieu of actual incarceration.
 {¶ 96} Appellant's Eight Assignment of Error is overruled.
 IX. {¶ 97} In his Ninth Assignment of Error appellant maintains that the State is guilty of selective prosecution.
 {¶ 98} We find that this issue was not presented in the trial court. "The general rule is that `an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'State v. Childs (1968), 14 Ohio St.2d 56, 236 N.E.2d 545, paragraph three of the syllabus; State v. Glaros (1960), 170 Ohio St. 471 166 N.E.2d 379, paragraph one of the syllabus; State v. Lancaster (1971), 25 Ohio St.2d 83,267 N.E.2d 291, paragraph one of the syllabus; State v. Williams (1977),51 Ohio St.2d 112, 117, 364 N.E.2d 1364. Likewise, `[c]onstitutional rights may be lost as finally as any others by a failure to assert them at the proper time.' State v. Childs, supra, 14 Ohio St.2d at 62,236 N.E.2d 545, citing State v. Davis (1964), 1 Ohio St.2d 28,203 N.E.2d 357; State, ex rel. Specht, v. Bd. of Edn. (1981),66 Ohio St.2d 178, 182, 420 N.E.2d 1004, citing Clarington v. Althar
(1930), 122 Ohio St. 608, 174 N.E. 251, and Toledo v. Gfell (1958),107 Ohio App. 93, 95, 156 N.E.2d 752. [Footnote omitted.].
 {¶ 99} Accordingly, appellant's Ninth Assignment of Error is overruled.
 {¶ 100} For the foregoing reasons, the judgment of the Lancaster Municipal Court is affirmed.
Gwin, P.J., Hoffman, J., and Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the foregoing reasons, the judgment of the Lancaster Municipal Court is affirmed. Costs to appellant.